UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:25-cr-00121-SDN |
| | ) | |
| LAUREN SABATTUS, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER DENYING MOTION TO DISMISS INDICTMENT</u>

Defendant Lauren Sabattus is charged with unlawfully receiving and transporting a firearm while under indictment, in violation of 18 U.S.C. §§ 922(n) and 924(a)(1)(D). ECF No. 1. Ms. Sabattus moves to dismiss the indictment, arguing 18 U.S.C. § 922(n) violates the Second Amendment, both on its face and as applied, because it is not "consistent with this Nation's historical tradition of firearm regulation." *N.Y. State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1, 17 (2022). The government opposes the motion, contending § 922(n) accords with the historical tradition of temporarily disarming indicted individuals to protect public safety. The Court held oral argument on the motion to dismiss on June 5, 20206. For the reasons that follow, the Court concludes 18 U.S.C. § 922(n) is constitutional, both facially and as applied to Ms. Sabattus, and therefore **DENIES** the motion to dismiss.

## BACKGROUND[1]

On or about December 19, 2024, a grand jury indicted Lauren Sabattus on multiple drug trafficking offenses in a separate federal proceeding. *See United States v. Diaz, et*

---

[1] For the purposes of this Order, the factual background is derived from the stipulated-to "anticipated facts" submitted with the government's opposition. *See* ECF No. 60 at 1–3.

1

*al.,* Docket No. 2:24-cr-00148-NT-4, ECF No. 42 ("Prior Action"). In that case, Ms. Sabattus moved to suppress evidence, and the Court scheduled a suppression hearing for July 31, 2025. Before the hearing occurred, on July 9, 2025, law enforcement arrested Ms. Sabattus in Hooksett, New Hampshire, after an officer observed her parked vehicle displaying a license plate registered to a different vehicle. Suspecting the vehicle had been stolen, the officer approached and questioned the driver—Ms. Sabattus. She initially identified herself as "Miranda Thomas," then admitted the name was false and gave her true identity, explaining that she had lied because she was on federal probation and lacked authorization to travel outside Maine. During this encounter, the officer observed drug paraphernalia inside the vehicle, including needles containing a dark brown liquid consistent with heroin or fentanyl.

Officers subsequently arrested Ms. Sabattus and recovered from her person a black Ruger handgun. She was charged under New Hampshire state law with one count of controlled drug possession and one count of felonious use of a firearm. Following her arrest, Ms. Sabattus spoke with law enforcement and admitted she had received the firearm three to four weeks earlier. Two days after the New Hampshire arrest, on July 11, 2025, the government moved to dismiss the federal drug-trafficking indictment against Ms. Sabattus. *See* Prior Action, ECF No. 127. Approximately one month later, the grand jury returned an indictment in this case, charging Ms. Sabattus with two violations of 18 U.S.C. § 922(n). ECF No. 1.

## LEGAL STANDARD

When challenged conduct falls within the "plain text" of the Second Amendment, "the Constitution presumptively protects that conduct." *United States v. Minor*, 165 F.4th 616, 621 (1st Cir. 2026) (quoting *Bruen*, 597 U.S. at 17). To defeat a Second Amendment

challenge, the government bears the burden to demonstrate the challenged restriction "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. In undertaking this inquiry, the court must assess whether the challenged regulation is "relevantly similar" to historical laws regulating firearms and must "apply[] faithfully the balance struck by the founding generation to modern circumstances." *United States v. Rahimi*, 602 U.S. 680, 692 (2024). The "why and how" of the regulation's burdens are central to this inquiry, because the historical analogues must resemble the challenged law both in purpose and in operation. *See United States v. Vizcaíno-Peguero*, 175 F.4th 34, 40–41 (1st Cir. 2026) (quotation modified); *see also United States v. Hemani*, No. 24-1234, 608 U.S. _____, 2026 WL 1751710, at *5 (June 18, 2026) (reaffirming that the "why" and "how" play a "central" role in determining whether a modern regulation is "relevantly similar" to historical ones) (quotation modified). At the same time, the historical analogues "need not be . . . dead ringers or historical twins." *Rahimi*, 602 U.S. at 692 (quotation modified). Even where a modern firearm regulation "does not precisely match its historical precursors," it may still be sufficiently analogous to satisfy the Second Amendment if it comports with the principles that underlie the historical tradition of firearm regulation. *Id.*

## DISCUSSION

### I.    Governing Appellate Authority and Emerging Consensus

The constitutionality of 18 U.S.C. § 922(n) under the *Bruen* and *Rahimi* framework presents a novel question within the First Circuit. At least six courts of appeals have recently held § 922(n) does not violate the Second Amendment. *See, e.g.*, *United States v. Jackson*, 152 F.4th 564, 569 (4th Cir. 2025) (affirming denial of motion to dismiss by analogizing § 922(n)'s purpose to surety laws and laws categorically disarming

3

"dangerous or untrustworthy persons"); *United States v. Quiroz*, 125 F.4th 713, 725 (5th Cir. 2025) (reversing district court's facial invalidation of § 922(n) based on historical analogies to pretrial detention), *cert. denied*, *Quiroz v. United States*, 146 S. Ct. 146 (Oct. 6, 2025); *United States v. Gore*, 118 F.4th 808, 814 (6th Cir. 2024) (affirming § 922(n) challenge denial by analogizing to historical pretrial detention laws); *United States v. Yancey*, No. 23-1651, 2024 WL 317636, at *2 (8th Cir. Jan. 29, 2024) (per curiam); *United States v. Stennerson*, 150 F.4th 1276, 1289 (9th Cir. 2024) (affirming denial of motion to dismiss by analogizing to pretrial detention and categorical disarmament of dangerous persons); *United States v. Ogilvie*, 153 F.4th 1098, 1111 (10th Cir. 2025), *cert. denied*, *Ogilvie v. United States*, 2026 WL 490576 (Feb. 23, 2026) (same).

Taken together, these decisions establish that 18 U.S.C. § 922(n) is sufficiently similar—even if not a "dead ringer"—to both the "how" (temporary disarmament of those under felony indictment) and "why" (protection of public safety from persons deemed dangerous) of the relevant historical analogues. Those analogues include laws governing pretrial detention of individuals facing serious charges, surety or "going armed" laws, and laws categorically disarming persons deemed dangerous. *See, e.g.*, *Gore*, 118 F.4th at 814 ("The 'why' and 'how' of § 922(n) are relevantly similar to our nation's tradition of pretrial detention."); *Jackson*, 152 F.4th at 570 ("In sum, § 922(n) . . . strike[s] a balance between the public's interest in keeping arms away from those who might misuse them and the rights of individuals to be free from government intrusion."). Several courts have also relied on *Rahimi*'s cautionary observation that "the Court does not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse," *Rahimi*, 602 U.S. at 682, to reject arguments that § 922(n) is facially unconstitutional

because it temporarily disarms persons without an individualized judicial determination of dangerousness. *See Ogilvie*, 153 F.4th at 1109; *Gore*, 118 F.4th at 816 ("That is what Congress has done in enacting § 922(n)—it has defined . . . a category of persons who, in its judgment, present special risks. And that categorical judgment is comparable to founding-era approaches to pretrial detention.").

At least two district court decisions finding § 922(n) unconstitutional—one facially, one as-applied—remain on the books, though the weight of federal appellate authority runs decidedly against them. *See United States v. Stambaugh*, 641 F. Supp. 3d 1185, 1193 (W.D. Okla. 2022), *reconsideration denied*, 650 F. Supp. 3d 1227 (W.D. Okla. 2023); *United States v. McDaniel*, No. 22-cr-0176, 2024 WL 3964339 (E.D. Wis. Aug. 28, 2024), *appeal dismissed*, No. 24-2468, 2024 WL 5473069 (Oct. 16, 2024). In *Stambaugh*, the court found surety laws an insufficient historical analogue to § 922(n) for three reasons: (1) surety laws imposed only a *condition* on the right to carry a firearm (posting bond), while § 922(n) effects a complete deprivation; (2) unlike surety laws, § 922(n) provides no self-defense exception; and (3) § 922(n) requires no individualized finding of dangerousness and affords the accused neither notice nor an opportunity to be heard. *See Stambaugh*, 641 F. Supp. 3d at 1192–93. The *Stambaugh* court did not address historical analogues involving either pretrial detention or the categorical disarming of dangerous persons.[2] In *McDaniel*, the district court found that surety or "going armed" laws, pretrial detention, and the categorical disarming of dangerous persons were each insufficient historical analogues. *McDaniel*, 2024 WL 3964339, at *6. The court held § 922(n)

---

[2] Ms. Sabattus relies on *Stambaugh* but concedes the government never appealed the decision and further that the Tenth Circuit's opinion in *Ogilvie* likely would have dictated reversal should the government have timely appealed. *See* ECF No. 57 at 3 n.4.

unconstitutional as applied to the defendant who had been indicted for felony child neglect and had no other criminal history, reasoning the charged offense bore no resemblance to the violent crimes animating the historical record. *Id*. at *8.

## II.    Text and Purpose of 18 U.S.C. § 922(n)

A brief overview of 18 U.S.C. § 922(n)'s text and legislative purpose clarifies both the "how" and "why" of the statute before turning to the historical analogues and the parties' competing arguments. The relevant portion of the statute reads: "It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(n). Here, Ms. Sabattus faces two violations of § 922(n): the unlawful receipt and transportation of a firearm while under felony indictment. ECF No. 1.

Federal courts consistently identify § 922(n)'s primary purpose as balancing an individual's Second Amendment rights against the government's interest in protecting the safety of the public from firearm violence. *See, e.g.*, *Quiroz*, 125 F.4th 713, 723–24 (ruling § 922(n) "fits neatly" within the "nation's historical tradition of protecting the public from criminal defendants indicted for serious offenses"); *Jackson*, 152 F.4th 564, 569–70 (reviewing the legislative history of § 922(n) and its predecessors and concluding they "strike a balance between the public's interest in keeping arms away from those who might misuse them and the rights of individuals to be free from government intrusion"); *see also* S. Rep. No. 90-1097, at 2197–98 (1968) (stating, in connection with the enactment of § 922, that "the ease with which any person can acquire firearms . . . is a significant factor in the prevalence of lawlessness and violent crime in the United States");

Kellen R. Funk & Sandra G. Mayson, *Bail at the Founding*, 137 Harv. L. Rev. 1816, 1891, 1895 (2024) (observing that "concern for public safety [in the Founding period] animated bail conditions and detention orders much as it does today"). With this framework in mind, the Court considers whether § 922(n) comports with the Second Amendment, both facially and as applied to Ms. Sabattus.

### III.   Facial Challenge

Ms. Sabattus first challenges 18 U.S.C. § 922(n) as facially unconstitutional, arguing the government cannot meet its burden to establish that the statute aligns with the Nation's historical tradition of firearm regulation. She emphasizes the statute's lack of "significant procedural protections" and the absence of an individualized judicial determination of dangerousness before the restriction of her Second Amendment rights. *See* ECF No. 57 at 6–8. The Government responds that § 922(n) accords with the history of firearm regulation and the core of the Second Amendment, including the right to keep and bear arms for self-defense, and the principle that when "an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." ECF No. 60 at 4–5 (citing *Rahimi*, 602 U.S. at 698).

To evaluate a Second Amendment challenge to a firearm regulation, the Court first asks whether "the Second Amendment's plain text covers" the regulated conduct. *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 43 (1st Cir. 2024) (quoting *Bruen*, 597 U.S. at 17). If so, the government must demonstrate the challenged regulation is consistent with this Nation's historical tradition of firearm regulation. *See Minor*, 165 F.4th at 621. The parties—and the Court—agree that the conduct § 922(n) regulates, namely receiving and transporting firearms, falls within the scope of the Second Amendment's protection. Accordingly, the government must establish that § 922(n)'s

restrictions on shipping, transporting, and receiving firearms or ammunition in interstate commerce fall within the Nation's historical tradition of firearm regulation. To meet this burden, the Government identifies three historical analogues, each of which it contends is sufficiently similar in both the "how" and "why" § 922(n) burdens Second Amendment rights: (1) laws governing pretrial detention, (2) surety and "going armed" laws, and (3) laws that categorically disarmed persons deemed dangerous. To defeat Ms. Sabattus' facial constitutional challenge, the government need establish only one analogue that satisfies the *Bruen/Rahimi* standard. The Court now addresses each in turn.

### 1.    Pretrial Detention

The Government principally analogizes 18 U.S.C. § 922(n) to the Nation's historical tradition of disarming indicted persons through either pretrial detention or bail. ECF No. 60 at 5–12. It argues Congress enacted § 922(n) to protect the public from the danger of firearm use by indictees, a purpose akin to Founding-era pretrial restrictions designed "both to ensure the defendant's appearance at trial and to keep the public safe in the meantime." *Id*. at 6–7 (quoting *Gore*, 118 F.4th at 814). In support of this argument, the government cites multiple secondary sources and law review articles describing the historical purpose of pretrial detention and bail statutes, including the mandatory presumption of pretrial detention for more serious, capital offenses to promote public safety. *See id*. at 7–9 (collecting secondary sources). It also contends § 922(n) is less restrictive than many historical analogues because it does not criminalize an indictee's existing firearm possession, thereby preserving their right to self-defense—the "central component" of the Second Amendment. *Id*. at 8.

Ms. Sabattus argues laws governing pretrial detention and bail are insufficient historical analogues to satisfy the government's burden. She emphasizes that unlike

detention hearings, § 922(n) requires no judicial determination of an individual's dangerousness and lacks procedural safeguards protecting Second Amendment rights, such as the rights to counsel, to testify and present witnesses, and to cross-examine the government's witnesses. *See* ECF No. 57 at 8; ECF No. 61 at 2–3. *McDaniel* supports that position, having held that those differences render pretrial detention an insufficient historical analogue as applied to that defendant. *See McDaniel*, 2024 WL 3964339, at *7. The government responds that historical pretrial detention need not precisely mirror § 922(n) and the "uniform founding-era practice" was to "categorically deny a right to bail to persons charged with certain serious offenses," and that "most jurisdictions effectively require[d] pretrial detention in serious cases." ECF No. 60 at 11 (quoting *Gore*, 118 F.4th at 816) (quotation modified).

The overwhelming weight of authority aligns with the government's position, as multiple federal courts of appeals have explicitly ruled that historical laws governing pretrial detention and bail establish that § 922(n) is consistent with the historical tradition of firearm regulation in the country. *See, e.g.*, *Gore*, 118 F.4th at 815–17; *Ogilvie*, 153 F.4th at 1110; *Quiroz*, 125 F.4th at 725. *Rahimi* indeed confirms modern regulations need not be one-to-one matches or "dead ringers" for historical analogues. *See Rahimi*, 602 U.S. at 692. Read together, these decisions compel the conclusion that § 922(n) accords with the Nation's "long history of disarming criminal defendants facing serious charges pending trial." *Quiroz*, 125 F.4th at 718.

Accordingly, this Court finds that historical laws governing pretrial detention and bail are sufficiently analogous to both the "how" and "why" of 18 U.S.C. § 922(n). *See, e.g.*, *Ogilvie*, 153 F.4th at 1110 (discussing varying state approaches to pretrial detention, including states requiring no individualized judicial assessment of danger, and holding

9

that the "historical tradition of disarmament" through pretrial detention renders § 922(n) relevantly similar in the burden it imposes on Second Amendment rights); *Gore*, 118 F.4th at 816 (noting Congress's judgment in enacting § 922(n) regarding the "special risks" posed by indictees and firearms is "comparable to founding-era approaches to pretrial detention").[3] The government has carried its burden by presenting historical sources and statutory history sufficient to establish that § 922(n) is consistent with the Nation's historical tradition of firearm regulation aimed at promoting public safety and preventing indicted individuals from using firearms to harm others. That purpose, and the mechanisms by which historical laws achieved it, are sufficiently analogous to § 922(n), notwithstanding the statute's lack of procedural safeguards and individualized determination of danger.

The Supreme Court's recent decision in *United States v. Hemani*, issued the same day as this Court's decision here, confirms that § 922(n) withstands constitutional scrutiny. *See Hemani*, 2026 WL 1751710, at *10–12. In *Hemani*, the Court held § 922(g)(3) unconstitutional as applied to a defendant whose sole disqualifying conduct was using marijuana a few times a week—a statute that, unlike § 922(n), automatically strips an individual of the right to bear arms the moment he becomes an unlawful drug user, without any prior judicial determination. *Id*. at *3, *10–12. In so holding, the Court critically noted that § 922 provisions involving "some manner of pre-deprivation process

---

[3] While the Fourth Circuit in *Jackson* declined to explicitly endorse pretrial detention and bail as a historical analogue based on insufficient evidence presented by the government, the court nonetheless affirmed the constitutionality of § 922(n) based on both surety and going armed laws and laws categorically disarming potentially dangerous groups. *Jackson*, 152 F.4th at 575, 579. Regarding pretrial detention, the court opined: "In another case and on a different record, we may be persuaded otherwise. But today . . . we choose not to rest on the history of pretrial detention." *Id*. at 571. Unlike in *Jackson*, and as explained above, I find the government has carried its burden regarding the pretrial detention analogy here.

10

before an individual's Second Amendment rights are lost" stand on different footing. *Id*. at *10 n.6. Section 922(n) falls within that category. Before its restrictions attach, a grand jury must find probable cause that the individual committed a felony, a safeguard several courts have held "closely resemble[s]" a neutral magistrate's finding of "reasonable cause to fear" the accused will cause harm. *See Jackson*, 152 F.4th at 575–76; *Quiroz*, 125 F.4th at 724. That independent judicial determination—absent in *Hemani*—aligns § 922(n) with the historical analogues *Hemani* preserved and distinguishes it from the automatic, process-free disarmament the Court rejected there. To satisfy the Second Amendment under *Bruen*, *Rahimi*, and *Hemani,* § 922(n) need not be a "dead ringer" or "historical twin," it instead need only "comport with the principles underlying the Second Amendment." *Rahimi*, 602 U.S. at 692 (quotation modified). It does.

Although this conclusion disposes of Ms. Sabattus' facial challenge to § 922(n), the Court now briefly addresses the government's remaining proposed analogues.

### 2.    Surety and "Going Armed" Laws

The government next points to two categories of laws, surety and "going armed" laws, which it argues both embody the central Second Amendment principle that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Rahimi*, 602 U.S. at 698. In *Rahimi*, the Supreme Court discussed both surety and going armed laws and held that, taken together, they provided sufficient historical analogues to the federal firearm possession statute at issue. The Court defined surety laws, carried over from English common law, as "a form of preventive justice" which "authorized magistrates to require individuals suspected of future misbehavior to post a bond." *Id*. at 695. Surety laws "took the form of a surety of the peace" and were frequently invoked to "prevent all forms of violence, including spousal

11

abuse." *Id*. Going armed laws historically prohibited "riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land." *Id*. at 697 (quotation modified). Those laws sought to prevent conduct that "disrupted the public order" and "led almost necessarily to actual violence." *Id*. (quotation modified). Like the principles underlying historical systems of pretrial detention and bail, surety laws and going armed laws rested on the twin premises of disarming dangerous individuals and protecting public safety.

Multiple federal courts of appeals have concluded these categories of laws provide substantial support for § 922(n)'s consistency with the Nation's historical tradition of firearm regulation. *See, e.g.*, *Jackson*, 152 F.4th at 577 (finding the "principles that underpin surety laws lead to a rule: just as legislatures have the power to disarm those who threaten physical harm to others, so too can they disarm those who possess dangerous weapons while under felony indictment") (quotation modified); *Quiroz*, 125 F.4th at 722–24. In *Jackson*, the Fourth Circuit explicitly concluded that substituting a grand jury indictment for a magistrate's individualized assessment of dangerousness did not "destroy" the historical analogy—the grand jury's probable cause finding "closely resemble[s]" a neutral magistrate's finding of "reasonable cause to fear" the accused would cause harm, as required by going armed laws. *See Jackson*, 152 F.4th at 575–76. As with pretrial detention, *McDaniel* reached the opposite conclusion, holding the absence of an adversarial process and judicial determination rendered both surety and going armed laws insufficient historical analogues—a conclusion driven in part by the defendant's underlying charge of felony child neglect and what the court viewed as a thin record of dangerousness. *McDaniel*, 2024 WL 3964339, at *9.

Although not addressing § 922(n) specifically, the First Circuit has upheld other modern federal firearm regulations by analogizing them to historical surety and going armed laws, relying on the same public safety principles and focus on preventing violence. *See Minor*, 165 F.4th at 625 (holding § 922(g)(9), which prohibits firearm possession by individuals convicted of certain misdemeanors, constitutional, relying in part on *Rahimi* and historical analogues to surety and going armed laws to conclude the statute is in line with the Nation's historical tradition of restricting gun use to mitigate threats of violence); *see also United States v. Levasseur*, No. 22-cr-00155, 2024 WL 3358221, at *3 (D. Me. July 9, 2024) (upholding § 922(g)(1), the felon-in-possession statute, by reference to surety and going armed laws). For the reasons described in the pretrial detention discussion, the Court finds both surety and going armed laws imposed a burden on Second Amendment rights sufficiently analogous to the one § 922(n) imposes on Ms. Sabattus.

### 3.    Categories of Individuals with Special Danger of Misuse

Finally, the government asserts 18 U.S.C. § 922(n) reflects the Nation's "longstanding tradition of disarming 'categories of persons thought by a legislature to present a special danger of misuse'" of firearms. ECF No. 60 at 16 (quoting *Rahimi*, 602 U.S. at 698). In support, the government identifies multiple historical examples of legislatures disarming groups such as loyalists and those who refused to swear allegiance to the new Republic during the Founding era, and later "persons of unsound mind" or the clearly intoxicated. *See id*. at 16–17. The government contends § 922(n) reflects Congress's judgment that individuals indicted for a felony offense present a special danger of misusing firearms and a corresponding risk to public safety. *Id*. at 17. *Rahimi* itself supports that view, expressly cautioning that its ruling should not be read to "suggest

that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *Rahimi*, 602 U.S. at 698. The Supreme Court reaffirmed that principle in *Hemani*, where—even while striking down § 922(g)(3) as applied to a casual marijuana user—the Court took care to preserve the validity of laws targeting categories of persons presenting a "special danger of misuse." *Hemani*, 2026 WL 1751710, at *10 n.6 (quoting *Rahimi*, 602 U.S. at 698).

Ms. Sabattus argues, however, that an indictment for a later-dismissed offense is not a reliable proxy for dangerousness. ECF No. 61 at 4. The Court is not persuaded. Both the design and stated purpose of § 922(n) reflect Congress's judgment that a grand jury's finding of probable cause as reflected in its indictment— even if later dismissed—serves as a reliable proxy for the danger an individual poses. Multiple courts of appeals have agreed that categorical disarmament of individuals the legislature has deemed dangerous provides a sufficient historical analogue to sustain § 922(n)'s constitutionality. *See, e.g.*, *Jackson*, 152 F.4th at 579; *Ogilvie*, 153 F.4th at 1107.

Accordingly, having found all three of the government's proposed analogues sufficiently grounded in historical regulations, the Court holds 18 U.S.C. § 922(n) is facially constitutional under *Bruen* and *Rahimi*.

## IV.    As-Applied Challenge

Although the Court rejects Ms. Sabattus' facial challenge to 18 U.S.C. § 922(n), it must next consider whether the statute is unconstitutional as applied to her specifically. On this point, the defense argues the statute is unconstitutional as applied because Ms. Sabattus "has never been convicted of a drug trafficking crime, drug possession, or any crime of violence," and because there has been no "individualized determination that Ms.

14

Sabattus has ever posed a threat of violence to anyone." ECF No. 61 at 2. The defense further asserts the government's "abandonment of the underlying indictment leading to [her §] 922(n) charge underscores the point that it is unconstitutional to strip her of her Second Amendment rights based on nothing more than an indictment." *Id.*

In the Prior Action, a grand jury indicted Ms. Sabattus on charges of Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), and Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(b)(1)(B). Prior Action, ECF No. 42. Ms. Sabattus does not dispute these charges are serious felony offenses that implicate concerns about dangerousness and firearm possession. Rather, she argues because a grand jury—rather than a court—made the finding of probable cause, and because the government ultimately dismissed the initial indictment, that charging her in this case under § 922(n) is not in line with the tradition of disarming potentially dangerous individuals, and thus unconstitutional. The first point dissolves quickly as multiple courts have concluded that a grand jury's finding of probable cause is a sufficient indicator of dangerousness. *See, e.g.*, *Jackson*, 152 F.4th at 576 (rejecting argument that § 922(n) is unconstitutional for lack of an adversarial proceeding and noting a grand jury indictment is "hardly a serious obstacle" for the government's burden under *Rahimi*).

Regarding the government's dismissal of the initial indictment, the Court has identified no precedent addressing a subsequent § 922(n) prosecution predicated on underlying felony charges the government later dismissed. Even so, the legislative purpose of § 922(n) makes clear that Congress deemed it reasonable to impose temporary and partial disarmament on individuals considered potentially dangerous based on a felony indictment. As explained above, that judgment accords with the Nation's historical tradition of firearm regulation and with the core Second Amendment principle that the

15

government may disarm an individual who "poses a clear threat of physical violence to another," as reflected in historical analogues involving pretrial detention, surety laws, and categorical disarmament laws. *Rahimi*, 602 U.S. at 698.[4]

The factual circumstances of this case further confirm that § 922(n) operates constitutionally as applied to Ms. Sabattus and in a manner consistent with the Nation's historical tradition of firearm regulation. Ms. Sabattus has no prior criminal convictions, so the government relies primarily on the facts underlying the instant § 922(n) indictment to establish a "special danger" of firearm misuse. The stipulated facts show that officers arrested Ms. Sabattus in the instant matter in New Hampshire, in violation of her condition of release prohibiting her from leaving Maine. ECF No. 60 at 2. At the time of her arrest, officers recovered a black 9 mm handgun and observed "drug paraphernalia" in the vehicle including "numerous hypodermic needles containing a dark brown liquid consistent with heroin and or fentanyl." *Id*. at 2–3. Officers also apprehended Ms. Sabattus while she drove a vehicle bearing license plates registered to a different vehicle. Taken together with the prior indictment charging her with felony drug trafficking offenses, these facts sufficiently support § 922(n)'s constitutionality as applied to Ms. Sabattus, given the inherent danger present in drug trafficking and firearm offenses. *See, e.g.*, *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) (observing "drug dealing is notoriously linked to violence" and that while the Supreme Court "might find some felonies so tame and technical as to be insufficient" to justify disarmament, "drug dealing is not likely to be among them"); *United States v. Miranda-*

---

[4] Regardless of whether this would change the analysis, Ms. Sabattus has not established the government's dismissal of the initial indictment against her rested on an insufficiency of evidence or any other substantive deficiency.

16

*Martinez*, 790 F.3d 270, 276 (1st Cir. 2015) (noting courts have "often observed that firearms are common tools in drug trafficking conspiracies") (quoting *United States v. Bianco,* 922 F.2d 910, 912 (1st Cir. 1991).

Unlike *McDaniel*, which found § 922(n) unconstitutional as applied to a defendant indicted for felony child neglect with no prior criminal history, the circumstances here confirm that § 922(n) applies to Ms. Sabattus in a manner consistent with the Nation's tradition of firearm regulation and analogous to the historical examples discussed above as to both the "why" and "how" § 922(n) burdens her Second Amendment rights. *See Rahimi*, 602 U.S. at 692. On two separate occasions, a grand jury has found probable cause to charge Ms. Sabattus with felony offenses—first with drug trafficking charges, and now with unlawful receipt and transportation of a firearm. As with historical pretrial detention, surety and going armed laws, and categorical disarmament laws, § 922(n) burdens Ms. Sabattus' ability to receive and transport firearms for the same "why": to promote public safety and guard against the potential danger of illegal firearm use. *See, e.g.*, *Stennerson*, 150 F.4th at 1289 ("The 'why' of [§ 922(n)] (and historical pretrial practices for serious offenses) is to further public safety and protect the integrity of the criminal process between indictment and trial."). Similarly, the "how" of § 922(n)'s burden on Ms. Sabattus—temporarily restricting only the receipt, transport, and shipment of firearms in interstate commerce, while leaving mere possession untouched— is sufficiently analogous to the historical examples discussed above, and, if anything, less intrusive on her Second Amendment rights.[5] *See* 18 U.S.C. § 922(n); *see also Gore*, 118

---

[5] Ms. Sabattus argues § 922(n)'s prohibition on shipping, transporting, or receiving firearms while still allowing the possession of firearms is nonsensical and imposes an "unnecessary restriction" on her Second Amendment rights. ECF No. 57 at 9–10. The government responds that the statute "is not unconstitutional for not going far enough" by extending to possession of firearms as well.

F.4th at 814 (discussing the "temporary" and "limited" deprivation of rights imposed by § 922(n)); *Quiroz*, 125 F.4th at 719 ("Section 922(n)'s restrictions are temporally limited; they apply only to the period between indictment and trial. The statute's restrictions are also limited in scope; they do not bar the *possession* of weapons—only their shipment, transport, or receipt."). Accordingly, § 922(n) imposes a comparable burden on Ms. Sabattus' right of armed self-defense to that imposed by any of the historical analogues previously discussed.

This conclusion also accords with *Hemani*, which held § 922(g)(3) unconstitutional as applied to a defendant whose only disqualifying conduct was using marijuana a few times a week, with no nexus to violence, drug trafficking, or any felony indictment. *Hemani*, 2026 WL 1751710, at *11–12. But the Court carefully limited its holding, expressly declining to address prosecutions involving individualized proof of dangerousness, categorical disarmament laws, or—critically—§ 922(g)(1)'s prohibition on firearm possession by those convicted of felonies. *Id*. at *10 n.6, *11. The facts of this case are wholly unlike those in *Hemani*. Ms. Sabattus was not a casual drug user possessing a firearm at home for self-defense; she was a person under active felony indictment for drug trafficking who was found to have allegedly received and transported a firearm in interstate commerce while violating her conditions of release. The concerns animating the Nation's historical tradition of firearm regulation—public safety and the danger posed by individuals under felony indictment—apply with full force to her circumstances. *Hemani* thus reinforces the Court's conclusion here.

---

ECF No. 60 at 10–11. *Rahimi* forecloses the argument: if pretrial imprisonment was historically permissible to respond to threats of physical safety, "then the lesser restriction of temporary disarmament" is likewise permissible. *Rahimi*, 602 U.S. at 699.

The Court therefore holds 18 U.S.C. § 922(n) is constitutional as applied to Ms. Sabattus.

## CONCLUSION

For these reasons, the Court **DENIES** Ms. Sabattus' motion to dismiss the indictment. ECF No. 57.

**SO ORDERED.**

Dated this 18th day of June, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**